**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FLO-TECH MECHANICAL SYSTEMS, INC., individually and as the representatives of a class of similarly situated persons and entities, <br><br> Plaintiff, <br><br> v. <br><br> SPECTRA360, INC.; <br><br> Defendant. | Civil Action No. 1:19-cv-07112 <br><br><br> **JURY DEMANDED** |

**CLASS ACTION COMPLAINT**

NOW COMES the Plaintiff, FLO-TECH MECHANICAL SYSTEMS, INC. ("Plaintiff"), by through its attorney, James C. Vlahakis, and brings this putative class action against Defendant SPECTRA360, INC.:

**I.     Parties, Jurisdiction and Venue**

1.     Plaintiff is an Illinois corporation, located in Addison, Illinois.

2.     Plaintiff maintains a telephone number, (630) 543-1497 (the "Facsimile Number"), which it uses to send and receive facsimiles.

3.     The Facsimile Number is connected to a device which utilizes hardware and software to allow the device to receive, store and print facsimiles ("Facsimile Machine").

4.     The Facsimile Machine is located within this District and Plaintiff uses the Facsimile Number to send and receive facsimiles.

5.     Defendant SPECTRA360, INC. ("Spectra") is a staffing and outsourcing company. Spectra is incorporated in Delaware.

1

6. Spectra's principal office is located at 875 Mahler Road, Suite 208, Burlingame, California 84010. Spectra's agent for service of process, Erin E. Warr, is located at 7417 Hillsboro Avenue, San Ramon, California 94583.

7. This Court has personal jurisdiction over Defendant because it transacted business within this judicial district through its sending of over forty unsolicited advertisements facsimile transmission to telephone facsimile machines located within the State of Illinois, and in particular, this judicial district.

8. Venue is proper because the subject facsimiles were sent to and received within this judicial district.

9. Defendant has also committed tortious acts within this judicial district by and through the sending of unsolicited facsimile advertisements to Plaintiff, and upon information and belief, to other similar unsolicited advertising facsimiles to this district.

10. Spectra's website states that it has been in operation since 2013 and that it "offers customized employment options to suit their clients, whether contract, temp to hire, direct hire, or even talent management solutions."

11. Spectra's outsourcing efforts constitute purposeful business activities within the State of Illinois.

12. Supplemental jurisdiction exists for Plaintiff's state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

## II. Summary Of The TCPA

13. The Telephone Consumer Protection Act of 1991, 47 USC §227 ("TCPA"), makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §227(b)(1)(C).

14. "The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. §227(a)(3).

15. "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

16. Unsolicited facsimiles prevent telefax machines from receiving authorized facsimiles, prevent their use for authorized outgoing facsimiles, cause undue wear and tear on the recipients' telefax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited advertising message.

17. Pursuant to the TCPA, the person or entity sending an advertising facsimile bears the burden of proof as to whether it had permission of the facsimile recipient to send an unsolicited facsimile advertisement. 47 U.S.C. §227(b)(1)(C)(i).

18. One way a sending party can demonstrate permission is through demonstrating an established business relationship ("EBR") with the receiving party.

19. The burden of proving an EBR is on the party that sends a facsimile:

> 12. To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. We emphasize that we are not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

\* \* \*

> 14. In the event a recipient complains that its facsimile number was not provided to the sender, the burden rests with the sender to demonstrate that the number was communicated in the context of the EBR.
>
> 15. . . . We also reiterate that senders of facsimile advertisements must have an EBR with the recipient in order to send the advertisement to the recipient's facsimile number. The fact that the facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number.

*See,* Report and Order and Third Order on Reconsideration (the "2006 FCC Order"). *See,*

https://apps.fcc.gov/edocs_public/attachmatch/FCC-06-42A1.pdf

20. The TCPA authorizes a plaintiff to receive minimum statutory damages of $500 for each unlawful facsimile and authorizes up to $1,500 in statutory damages where person or entity is found to have willingly or knowingly committed a violation of the TCPA.

**III.   The Subject Facsimile**

21. On October 4, 2019, Defendant sent or caused to be sent an unsolicited facsimile advertisement to Plaintiff's Facsimile Number.

22. The October 4, 2019, facsimile, hereafter the "Subject Facsimile", depicts material advertising the commercial availability of "CDL A, B, & C, AND NON-CDL DRIVERS, WAREHOUSE & YARD WORKERS, FORK LIFT OPERATORS" and the Subject Facsimile was sent by Defendant without Plaintiff's prior express invitation or permission, in writing or otherwise.

23. The Subject Facsimile states in part: "Spectra360 is one of the nation's fastest growing talent management agencies. By solely focusing on the logistics & transportation industry we have built an impeccable reputation for speed and adaptability when placing qualified CDL & non-CDL drivers and warehouse personnel. Whether on a temporary or temp-to-perm basis."

4

24. A copy of the Subject Facsimile is depicted below:



25. The Subject Facsimile is an unsolicited advertisement as defined by 47 U.S.C. §227(a)(5).

26. Accordingly, upon information and belief, Defendant knew of and authorized the sending of the Subject Facsimile.

27. Plaintiff did not consent to, request or otherwise solicit the Subject Facsimile.

28. The sending of the Subject Facsimile by Defendant violated the TCPA.

29. The Subject Facsimile is representative of Defendant's unlawful conduct towards other Illinois based recipients of identical or similar *unsolicited* facsimiles.

30. Accordingly, on behalf of itself and all others similarly situated, Plaintiff brings this civil action to certify a class of persons and entities who were sent facsimile advertisements without their prior express invitation or permission.

31. The Subject Facsimile, by offering the availability of different drivers, was and is an "unsolicited advertisement" as defined by 47 U.S.C. §227(a)(5) because the Subject Facsimile advertised and promoted the commercial availability of property, goods and/or services.

32. The Subject Facsimile was transmitted by Defendant without Plaintiff's "prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

33. To the best of Plaintiff's knowledge information and belief, Defendant did not have a prior established business relationship with Plaintiff.

34. As set forth above, Defendant sent the Subject Facsimile to the Facsimile Number.

35. Alternatively, Defendant caused the Subject Facsimile to be sent to the Facsimile Number by a currently unknown third-party.

36. Plaintiff's receipt of the Subject Facsimile caused Plaintiff to suffer concrete and actual harm.

37. Plaintiff, as recipient of the Subject Facsimile, temporarily lost the use of its Facsimile Machine and its paper, ink and toner for a period of time.

38. Receiving, viewing and printing the Subject Facsimile wasted the Plaintiff's valuable time and the time of one of its employees.

39. The time wasted to review the Subject Facsimile could have been spent on something else.

40. The transmission of the Subject Facsimile interrupted and disturbed Plaintiff's right of privacy and right to not be disturbed with unsolicited advertising facsimiles.

41. When Defendant sent or approved the Subject Facsimile to be sent to Plaintiff's Facsimile Number, the sending and receipt of Subject Facsimile tied up Plaintiff's Facsimile Number, caused Plaintiff's to use data, resulted in the unnecessary use of computer storage space and unauthorized usage of the Facsimile Machine's software and hardware.

42. Contacting the sender of an unsolicited facsimile for the purpose of telling the sending party to stop sending unsolicited facsimiles wastes the time of the recipient.

**COUNT I – Individual Claim for Violations of the TCPA**

43. Plaintiff incorporate the above paragraphs as if fully set forth.

44. The Subject Facsimile was an unsolicited advertisement as contemplated by the TCPA.

45. The TCPA provides a private right of action to bring this action on behalf of Plaintiff. 47 U.S.C. §227(b)(3).

46. As set forth above, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Subject Facsimiles to Plaintiff without Plaintiff's permission and without a valid EBR.

WHEREFORE, Plaintiff, in its individual capacity, demands judgment in its favor and against each Defendant as follows:

    a.    award Plaintiff $1,500 for the subject facsimile because Defendant's violations were "willful or knowing";

    b.    enjoin Defendant from additional violations of the TCPA;

    c.    award Plaintiff reasonable attorney's fees; and

    d.    award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

### COUNT II – Class Action for Violations of the TCPA

47.    Plaintiff incorporate the above paragraphs as if fully set forth.

48.    More than forty (40) Illinois companies or persons in the State of Illinois received the Subject Facsimile or something similar to the Subject Facsimile without their consent and were harmed in a similar manner as alleged above by Plaintiff.

49.    Upon information and belief, because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimiles, it is plausible to allege that Defendant has sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile in violation of the TCPA.

50.    In 2019, Defendant sent or caused to be sent the Subject Facsimiles to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

51.    On information and belief, in 2018, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

52. On information and belief, in 2017, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

53. On information and belief, in 2016, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

54. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the putative class members to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. §227(b)(3).

55. Plaintiff intends to certify a class which includes the Subject Facsimile and all other similar unsolicited advertising facsimiles sent during the four years prior to the filing of this civil action through the present.

56. The unlawful sending of the Subject Facsimile and other similar unsolicited facsimiles to Plaintiff and other putative class members caused Plaintiff and the putative class members to suffer damages.

57. The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the recipients to use and waste paper and toner when they printed the subject facsimiles.

58. The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members occupied and/or depleted their telephone lines, data lines, computer storage related to the operation of their facsimile machines.

59. The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the

class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

60. This wasted time could have been spent on the Plaintiff's and the other class members' business activities.

61. Just like with Plaintiff, Defendant cannot demonstrate that it had the consent of the recipients of each facsimile advertisement.

62. The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members interrupted the Plaintiff's and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

63. Common questions of law and fact apply to the claims of all class members. The common material questions of fact and law include, but are not limited to, the following:

   a. Whether Defendant sent unsolicited fax advertisements;

   b. Whether the facsimiles advertised the commercial availability or quality of property, goods, or services;

   c. The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent the Subject Facsimiles:

   d. Whether Defendant faxed advertisements without first obtaining the recipients' prior invitation or permission;

   e. Whether Defendant sent the faxed advertisements knowingly;

   f. Whether Defendant violated the provisions of 47 U.S.C. §227 and the regulations promulgated thereunder;

   g. Whether Defendant should be enjoined from faxing advertisements in the future;

   h. Whether Plaintiff and the other members of the class are entitled to statutory damages; and

   i. Whether the Court should award treble damages.

64. Plaintiff's claims are typical of the claims of all class members.

65. Plaintiff and other members of the class received the same or similar facsimiles as the facsimiles sent by or on behalf of Defendant advertising products, goods and services of Defendant during the Class Period.

66. Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar facsimiles or facsimiles, which were sent without prior express invitation or permission.

67. Accordingly, Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.

68. Plaintiff will adequately represent and protect the interests of the class.

69. Plaintiff's interest in this civil action, has no conflicts, and Plaintiff retained experienced class counsel to represent the class.

70. Plaintiff's counsel, James C. Vlahakis, is an experienced consumer class action litigator. For example, Mr. Vlahakis has been appointed to serve as a Steering Committee Member in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal. May 5, 2018).

71. The following is a summary of representative cases where Mr. Vlahakis defended or prosecuted consumer rights claims in federal court:

> a. <u>Class Action Settlements</u>. In conjunction with class counsel, Mr. Vlahakis has received court approval of approximately two dozen FDCPA based class action settlements. Further, in conjunction with class counsel, courts have approved the following multi-million-dollar TCPA based class action settlements. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

11

b. <u>Class Certification Rulings</u>. Defeating a TCPA cell-phone based class certification motion in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013) and decertifying a TCPA based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012);

c. <u>Federal Communication Commission ("FCC") proceedings</u>. Obtaining favorable declaratory relief for a client before the FCC relative to a TCPA junk facsimile-based cause of action (*see* FCC's Order of October 30, 2014, FCC14-164, in CG Docket Nos. 02-278 and 05-338); and

d. <u>Appellate proceedings</u>. On September 5, 2019, the Consumer Finance Protection Bureau filed an amicus brief in support of Mr. Vlahakis' client in an appeal pending before the U.S. Court of Appeals for the *Seventh Circuit, Preston v. Midland Credit Management, Inc.*, 18-3119.

72. Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant, and/or (b) as a practical matter, adjudication of the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

73. Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a. The evidence of the absence of consent relative to putative class members will result in the fair and efficient adjudication of class members' claims without the need for separate or individualized proceedings;

b. Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from business records and will not require individualized or separate inquiries or proceedings;

c. Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d. The amount likely to be recovered by individual class members

      does not support individual litigation;

e. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs;

f. This case is inherently manageable as a class action in that Defendant:

    (i) specifically targeted persons (both businesses and individuals) to receive unsolicited facsimile transmissions ;

    (ii) purchased a list of advertising leads from a third-party;

g. This case is inherently manageable as a class action in that Defendant:

    (i) business records from Defendant will readily identify class members and establish liability and damages;

    (ii) business records from one or more third-parties will readily identify class members and establish liability and damages;

h. Liability and damages can be established for the Plaintiff and the class with the same common proofs because statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

i. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

j. A class action will contribute to uniformity of decisions concerning the actions taken by Defendant; and

k. the claims of the class are likely to go unaddressed absent class certification.

74. In accordance with FRCP 23(b)(1), (b)(2) and (b)(3), Plaintiff brings Count II of this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons in the United States who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, including, but not limited to the availability of different drivers (3) from whom Defendant did not obtain "prior express invitation or

permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship.

75. Plaintiff intends the above class to include everyone in the United States who received the identical or similar facsimile as the Subject Facsimiles.

76. Plaintiff also intends the above class to include everyone who received similar variations of unsolicited facsimile advertisement.

77. Alternatively, Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons located in the State of Illinois who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, including, but not limited to the availability of different drivers (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship.

**Count III – Class Action Claim Pursuant to the Illinois Consumer Fraud Act**

78. As alleged above, Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff.

79. Defendant violated Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, by sending the Subject Facsimile to Plaintiff and other Class Members.

80. The Facsimiles are "advertisement[s]" as the term is defined by Section 505/1(a) of the ICFA.

81. Plaintiff is a "person" as this term is defined by Section 505/1(c) of the ICFA.

82. Defendant treated Plaintiff as a "consumer" as this term is defined by Section 505/1(e) of the ICFA because Defendant sought to solicit payment from Plaintiff for what was being advertised on the Subject Facsimiles.

83. The Subject Facsimiles are an "advertisement" as this term is defined by Section 505/1(a) of the ICFA.

84. According to Section 505/1(a) of the ICFA:

> The term "advertisement" includes the attempt by publication, dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement", or "reminder", to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction.

85. The Subject Facsimiles are form of a "sale" as this term is defined by Section 505/1(d) of the ICFA.

86. According to Section 505/1(d) of the ICFA, "[t]he term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or on credit."

87. The Subject Facsimile was a form of "trade" and/or "commerce" as these terms are defined by Section 505/1(f) of the ICFA.

88. According to Section 505/1(f) of the ICFA:

> The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

89. The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."

90. In relevant part, Section 505/2 states as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade

15

    Practices Act" . . . in the conduct of any trade or commerce. . . .

91. As alleged above and detailed below, Defendant violated Section 505/10a(a) of the ICFA.

92. Plaintiff did not consent to receiving the Subject Facsimiles.

93. Defendant violated ICFA by transmitting the Subject Facsimiles without Plaintiff's consent.

94. Defendant intentionally sent the Subject Facsimiles, and the sending of the Subject Facsimiles constitutes an unfair or deceptive act or practice "in the course of conduct involving trade or commerce".

95. Plaintiff suffered tangible damages as a result of receiving the Subject Facsimiles in the form of wasted toner and paper, wear and tear of the subject facsimile machine, and time wasted in terms of having to look at, print and dismiss the Subject Facsimile for what it is – unsolicited junk.

96. Sending unsolicited facsimiles offends public policy. Not only is the sending of unsolicited facsimiles unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law. *See* 720 ILCS 5/26-3.

97. Sending unsolicited facsimiles is oppressive because unsolicited facsimiles impose a lack of meaningful choice and/or an unreasonable burden upon recipients.

98. A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

99. Costs that are imposed on an unwilling consumer can constitute a substantial injury.

100. Because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimiles, it is plausible to

allege that Defendant has sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile in violation of the TCPA.

101. On information and belief, more than forty (40) Illinois companies or persons in the State of Illinois received similar unsolicited facsimiles as the Subject Facsimiles without their consent and were harmed in a similar manner as alleged above by Plaintiff.

102. On information and belief, 2019, Defendant sent or caused to be sent the Subject Facsimiles to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

103. On information and belief, in 2018, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

104. On information and belief, in 2017, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

105. On information and belief, in 2016, Defendant sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

106. As alleged above, unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time.

107. Defendant's practice of sending unsolicited facsimiles has violated Illinois public policy, deprived persons and businesses of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate.

108. Accordingly, the Complaint plausibly suggests that the aggregate harm caused by this practice would constitute substantial harm and thus unfair within the meaning of the ICFA.

WHEREFORE, Plaintiff, in his individual capacity, demands judgment in its favor and against Defendant, as follows:

a. award Plaintiff and the class members an amount to be determined to reimburse Plaintiff and the class members for the amount of harm caused by Defendant's violations of ICFA;

c. award statutory attorney's fees and costs pursuant to ILCS 505/10a(c);

d. enjoin Defendant from additional violations of ICFA; and

e. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Plaintiff hereby demands a jury trial.**

Respectfully submitted,

Dated: October 29, 2019

Plaintiff FLO-TECH MECHANICAL SYSTEMS, INC., individually, and as the representatives of a class of similarly situated persons

/s/ James C. Vlahakis
James C. Vlahakis
Sulaiman Law Group, Ltd
2500 South Highland Avenue #200
Lombard, IL 60148
Phone: (630) 581-5456
jvlahakis@sulaimanlaw.com